## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KLEO AG, | |
| *Plaintiff*, | |
| v. | No. 22-cv-01664 (DLF) |
| RIVADA NETWORKS, INC., | |
| *Defendant*. | |

### <u>MEMORANDUM OPINION</u>

Before the Court is Rivada Networks, Inc. (Rivada)'s third Motion to Dismiss.  Dkt. 35.

For the reasons that follow, the Court will grant Rivada's motion and deny leave to amend.

### I.       BACKGROUND

On June 9, 2022, KLEO AG (KLEO) filed a complaint against Rivada asserting claims of

defamation and tortious interference with contract.  Compl. ¶¶ 41–61, Dkt. 1.  Rivada moved to

dismiss for failure to state a claim under Rules 9 and 12(b)(6) of the Federal Rules of Civil

Procedure, *see* Dkts. 9, 11, and in a November 2, 2022 order, the Court granted Rivada's motion,

*see* Order of Nov. 2, 2022, Dkt. 23.  The Court held that, even assuming Rivada's "statements are

verifiably false and capable of defamatory meaning," KLEO failed to allege an element of

defamation: namely, that Rivada's statements were actionable as a matter of law or caused special

harm (i.e., special damages).  *Id.* at 2–3.  The Court also dismissed KLEO's tortious-interference

claim.  *See id.* at 3–4.

The Court granted KLEO leave to amend, *see id.* at 5, and on December 1, 2022, KLEO

filed its First Amended Complaint with only a defamation claim, *see* Dkt. 24.  Rivada moved to

dismiss the First Amended Complaint, *see* Dkts. 26, 27, and on March 7, 2023, the Court granted

the motion, *see* Order of Mar. 7, 2023, Dkt. 31.  The Court held that KLEO did "not add[] allegations that Rivada's statements were defamatory as a matter of law . . . . Nor has it sufficiently pleaded special harm."  *Id.* at 2.  On the latter point, the Court concluded that the First Amended Complaint did not satisfy Rule 9(g)'s heightened pleading standard for special damages because it lacked (1) allegations "about the precise nature of KLEO's damages" arising from lost business partnerships and (2) "any factual assertions that would support a causal connection between Rivada's statements and any harm" to business partnerships.  *Id.* at 3.

The Court granted KLEO another opportunity to amend, *see id.* at 4, and on April 14, 2023, KLEO filed its Second Amended Complaint, *see* Dkt. 33.  Once again, Rivada moves to dismiss with prejudice for failure to state a claim.  *See* Dkt. 35.

## II.    LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility."  *Iqbal*, 556 U.S. at 678 (cleaned up).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (cleaned up). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (cleaned up). An "unadorned, the-defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Ultimately, "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When deciding a Rule 12(b)(6) motion, the court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). A Rule 12(b)(6) dismissal "is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

Further, under Rule 15, courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed," or "futility of amendment"—"the leave sought should, as the rules require, be freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (cleaned up).

### III.    ANALYSIS

To state a claim for defamation, a plaintiff must allege, among other things, "either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Croixland Props. Ltd. P'ship v. Corcoran*, 174 F.3d 213, 215 (D.C. Cir. 1999) (quoting *Crowley v. N. Am. Telecomm. Ass'n*, 691 A.2d 1169, 1172 n.2 (D.C. 1997)).  In its latest motion to dismiss, Rivada argues that the Second Amended Complaint fails to plead either defamation as a matter of law or special damages.[1]  *See* Def.'s Mem. in Supp. of Mot. to Dismiss at 13–16, Dkt. 35-1.  Rivada further argues that the Court should deny KLEO leave to amend a third time.  *Id.* at 16–18.  The Court will address each in turn.

### A.    Motion to Dismiss

The Court will grant Rivada's motion to dismiss because KLEO has failed to state a claim for defamation.

In its latest round of briefing, KLEO has not challenged the Court's previous holding that it failed to plead defamation as a matter of law.  *See* KLEO's Mem. in Opp'n at 10 n.2, Dkt. 36 ("Although KLEO respectfully disagrees with that ruling, it need not challenge it here, because KLEO has now adequately alleged defamation per quod—by identifying special damages suffered as a result of Rivada's defamatory statements."); Order of Nov. 2, 2022 at 2–3 (concluding KLEO "has not stated a claim for defamation as a matter of law"); Order of Mar. 7, 2023 at 2 ("KLEO has not added allegations that Rivada's statements were defamatory as a matter of law or challenged the Court's previous ruling on this ground.").  Indeed, the Second Amended Complaint

---

[1] Rivada also argues that KLEO fails to plead that the statements were false and/or defamatory. *See* Def.'s Mem. in Supp. of Mot. to Dismiss at 8–12.  As in its prior order, the Court will assume, without deciding, that KLEO satisfied this element because KLEO has nevertheless failed to plead defamation as a matter of law or special damages.  *See* Order of Nov. 2, 2022 at 2–3.

does not add any new statements from Rivada, much less "statements about extreme subjects, such as criminal behavior, serious sexual misconduct, a loathsome disease, or a person's suitability for his chosen profession."  *Smith v. Clinton*, 886 F.3d 122, 128 (D.C. Cir. 2018) (cleaned up).

That means that KLEO's complaint must plead special damages to survive a motion to dismiss, and it does not.  Under Rule 9(g), "[i]f an item of special damage is claimed, it must be specifically stated."  Fed. R. Civ. P. 9(g).  "While it may not be necessary to provide the *maximum* degree of detail that [a] plaintiff might be capable of providing," a plaintiff may not "merely assert[] in general terms that [certain statements] cost [it] financially."  *Browning v. Clinton*, 292 F.3d 235, 246 (D.C. Cir. 2002) (cleaned up).  Rather, as the Court previously noted, "a plaintiff may satisfy Rule 9(g)'s pleading requirements by, for example, 'identifying either particular customers whose business has been lost or facts showing an established business and the amount of sales before and after the disparaging publication, along with evidence of causation.'"  Order of Mar. 7, 2023 at 2 (quoting *Browning*, 292 F.3d at 245).  In other words, to plead special damages, a plaintiff must plead economic harm and causation.

Although the Second Amended Complaint now satisfies the economic-harm requirement, it fails the causation requirement.  Unlike the First Amended Complaint, the Second Amended Complaint properly alleges "the precise nature of KLEO's damages, such as explanation of what kinds of harm the lost [business] relationships caused."  Order of Mar. 7, 2023 at 3.  A plaintiff may satisfy the economic-harm requirement by pleading "additional expenses" arising from defamatory statements.  *U.S. Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 74 (D.D.C. 2021).  In *Dominion*, for example, the plaintiff alleged it "incurred $1,170,000 in expenses to mitigate harm to reputation and business" and "project[ed] lost profits of $200 million over the next five years when reduced to present value."  *Id.*  Likewise, here, KLEO alleges it incurred (1) "at least €4,000

in travel expenses" to "secure partnerships with other manufacturers" after losing other manufacturer relationships; (2) "€210,000 in expected fees to head hunters for the replacement of KLEO's former employees"; and (3) "approximately CHF 350,000.00 in legal fees[] attempting to reverse the transfer of [its] spectrum rights" from Rivada.[2]  Second Am. Compl. ¶¶ 42, 44, 45. These allegations are sufficiently specific to satisfy Rule 9(g)'s special damages requirement.

Like the First Amended Complaint, however, the Second Amended Complaint fails to "offer any factual assertions that would support a *causal connection* between Rivada's statements and any harm."  Order of Mar. 7, 2023 at 3 (emphasis added).  Under the causation requirement, a plaintiff must "specify facts showing that such special damages were the natural and direct result of the defendant's conduct (here, the alleged false and disparaging [statements])."  *Browning*, 292 F.3d at 245 (cleaned up); *see also Fowler v. Curtis Publ'g Co.*, 182 F.2d 377, 379 (D.C. Cir. 1950) ("[T]he complaint must set forth precisely in what way the special damage resulted from the spoken or written words." (quoting 2 Moore's Federal Practice 1921–23 (1948)).  The Second Amended Complaint falls far short of this standard.  It merely alleges—in reference to each alleged economic harm—that "[o]n information and belief, the loss of these relationships was caused by Rivada's defamatory statements."  Second Am. Compl. ¶¶ 42–44.  Such conclusory "boilerplate recitation[s]" of causation do not suffice under Rule 9(g).  *Smith*, 886 F.3d at 128.  As the Court explained it its previous order, the D.C. Circuit has found allegations even more specific than KLEO's insufficient to satisfy Rule 9(g).  *See* Order of Mar. 7, 2023 at 2 (citing *Browning*, 292

---

[2] In contrast, other allegations in the Second Amended Complaint are speculative and vague as to harm and are thus insufficient under "Rule 9(g)'s heightened pleading requirements."  *Dominion*, 554 F. Supp. 3d at 72; *see, e.g.*, Second Am. Compl. ¶ 42 ("KLEO has spent time and resources attempting to repair these relationships."); *id.* ¶ 43 ("KLEO ha[s] already paid the prior consultant nearly €30,000[] and will ultimately need to pay more . . . given the inefficiencies of replacing the prior consultant in the middle of the satellite project.").

F.3d at 246 (holding as insufficient under Rule 12(b)(6) allegations that "as a proximate result of the publication of" the defendant's statements, the plaintiff was unable "to sell the publishing and other rights in the manuscript" and "in general terms that *The New Yorker* article cost her financially" (cleaned up))).   KLEO has thus failed to plead causation as required by Rule 9(g).

KLEO's arguments to the contrary are unavailing.  First, KLEO emphasizes that "there is nothing wrong with" pleading causation based "on information and belief."  Opp'n at 9.  But inserting the phrase "on information and belief" does not cure an otherwise conclusory allegation, nor does it relieve a defamation plaintiff of the burden to "allege[] . . . facts suggesting causation." *Browning*, 292 F.3d at 246; *cf. United States ex rel. Davis. v. District of Columbia*, 591 F. Supp. 2d 30, 37 (D.D.C. 2008) ("As a general rule, pleadings made upon 'information and belief' do not satisfy Rule 9(b)'s particularity requirement.").  Absent "specifically stated" factual allegations suggesting Rivada's statements caused the loss of KLEO's business partnerships, Fed. R. Civ. P. 9(g), the Court "need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations," *Hettinga*, 677 F.3d at 476.

Second, KLEO asserts that the "short[]" gap in time between Rivada's statements and KLEO's subsequent loss of business permits an inference of causation.  Opp'n at 9–10.  The problem with this argument, however, is that the Second Amended Complaint does not allege specific dates on which KLEO lost business.  Rather, it vaguely alleges that KLEO lost business "[a]fter" or "[s]hortly after" Rivada's statements.  Second Am. Compl. ¶¶ 42–43; *see, e.g.*, *id.* ¶ 43 (alleging "[s]hortly after these defamatory statements, a well-known leading European space expert and paid contractual consultant refused to continue providing services").  Under Rule 9(g)'s heightened pleading standard, the Court cannot draw a causal inference in KLEO's favor absent

more "specific[] state[ments]" about when KLEO incurred alleged economic harm.[3]  Fed. R. Civ. P. 9(g).

Finally, KLEO contends causation may be inferred from its business partners "parrot[ing]" Rivada's allegedly defamatory statements before cutting ties.  Opp'n at 10 (citing Second Am. Compl. ¶ 42).  The only allegations that support "parroting" are contained in paragraph 42 of the Second Amended Complaint, which alleges "[d]uring the DC SATELLITE Conference, some of these manufacturers expressed their belief that KLEO's satellite project appeared likely to fail, or had already failed."  Second Am. Compl. ¶ 42.  But KLEO is unclear whether those manufacturers "expressed" their "beliefs" before or after Rivada made its allegedly defamatory statements.  Moreover, the business partners' statements, which the complaint does not recount in any detail, can hardly be said to "parrot" Rivada's specific statements about KLEO's relationship with China and Chinese shareholders.  *See id.* ¶¶ 41, 42.

The Court will thus grant Rivada's motion to dismiss because KLEO has failed to plead its defamation claim under Rule 9(g)'s heightened pleading standard for special damages.

---

[3] The Second Amended Complaint alleges that on May 20, 2022—several months after Rivada's statements—"the Liechtenstein Office of Communication approved the transfer of the relevant spectrum frequency rights from TRION to Rivada AG and Rivada GmbH . . . caus[ing] specific pecuniary harm to KLEO, in an amount to be later proven" and "approximately CHF 350,000 in legal fees."  Second Am. Compl. ¶ 45.  But other allegations in the Second Amended Complaint refute any inference that Rivada's statements caused KLEO's loss of frequency rights.  *See* Second Am. Compl. ¶ 27 (alleging "[i]n the second half of 2021, Rivada US launched a plan to take control of the board of TRION by secretly purchasing the ownership interest of one of TRION's members . . . and then attempting to install its own loyalist board"); *id.* ¶ 29 (alleging that "[o]n March 2, 2022"—before Rivada's March 22, 2022 statements—"the putative TRION board that Rivada US attempted to install declared to KLEO the purported termination of the Frequency Usage Agreement").  These other allegations suggest that KLEO lost its frequency rights because of Rivada's corporate maneuvering *before* its allegedly defamatory statements on March 22, 2022.  They also support an inference that KLEO's business relationships suffered because of its loss of frequency rights, not because of Rivada's statements.  Aside from the above, no other allegations causally link Rivada's statements and KLEO's loss of frequency rights.

### B.       Leave to Amend

The Court will also deny KLEO leave to amend.  "Although Federal Rule of Civil Procedure 15(a)(2) instructs courts to freely grant a plaintiff leave to amend when justice so requires, when deciding whether to allow a party to amend a complaint, courts may consider repeated failure to cure deficiencies by amendments previously allowed and futility of amendment." *Nichols v. Young*, 248 F. Supp. 3d 1, 11 (D.D.C. 2017) (cleaned up).  Both factors weigh in favor of denying leave to amend here.

First, KLEO has "repeated[ly] fail[ed] to cure deficiencies by amendments previously allowed." *Id.* (cleaned up).  KLEO has again failed to plead special damages with specificity—a shortcoming identified in the Court's previous orders.  *See* Order of Nov. 2, 2022 at 4 ("[T]he Court will exercise its discretion and allow the plaintiff to amend the complaint to include additional allegations relating to . . . special damages."); Order of Mar. 7, 2023 at 4 ("Because KLEO has not plausibly pleaded either that Rivada's statements were actionable as a matter of law or that those statements caused KLEO special harm, the Court will again dismiss its amended complaint and grant KLEO an opportunity to address these deficiencies by filing a second amended complaint.").  KLEO's failure to plead causation in its third attempt "does not turn on any legal principle or omission . . . not apparent from the Court's earlier opinion[s]." *Nichols*, 248 F. Supp. 3d at 12; *see* Order of Mar. 7, 2023 at 3 ("Nor does KLEO offer any factual assertions that would support a causal connection between Rivada's statements and any harm.").  KLEO has thus "enjoyed numerous opportunities to present [its] claims," but it nevertheless failed to rectify the articulated deficiency in its pleadings.  *Nichols v. Holder*, 938 F. Supp. 2d 97, 103 (D.D.C. 2013).

Second, any further amendment would be futile.  "Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss."  *James Madison Ltd., by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).  KLEO did not file a proposed Third Amended Complaint, nor did it propose new allegations (as it did in its opposition to Rivada's first motion to dismiss).  *See* Mem. in Opp'n to Def.'s Mot. to Dismiss at 14–15, Dkt. 18 (proposing special-damages allegations based on an affidavit from KLEO Connect's Chief Operating Officer).  After two amended complaints, three dismissal orders, and KLEO's repeated failure to plead special damages, the Court concludes that KLEO is unable to cure the deficiencies in its pleadings.  Granting KLEO a fourth attempt to satisfy the heightened pleading requirements of Rule 9 would thus prove futile.

## CONCLUSION

For the foregoing reasons, the Court grants Rivada's Motion to Dismiss and denies KLEO leave to amend.  A separate order consistent with this decision accompanies this memorandum opinion.

November 16, 2023

DABNEY L. FRIEDRICH
United States District Judge